# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD NASH, an individual,<br><br>                                              Plaintiff,<br>        vs.<br>LIFE INSURANCE COMPANY OF NORTH AMERICA, an Illinois corporation, GROUP LONG TERM DISABILITY INSURANCE PLAN FOR ADMINISTAFF OF TEXAS INC. AND PARTICIPATING COMPANIES, a group welfare benefits plan under ERISA,<br><br>                                              Defendants. | CASE NO. 08cv893-WQH-RBB<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Attorney's Fees, filed by Plaintiff Todd Nash. (ECF No. 102).

**I.    Background**

This is an action for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").

On December 9, 2010, the Court issued an Order following a bench trial. (ECF No. 98). The Court found that Defendant Life Insurance Company of North America abused its discretion by terminating Plaintiff's benefits under the "regular occupation" standard. *Id.* at 46. The Court ordered that "Plaintiff's benefits under the 'regular occupation' standard shall

be reinstated from the time they were terminated to the time they were due to expire." *Id.* The Court "award[ed] Plaintiff past life insurance premiums paid from the date of termination to the time that the 'regular occupation' benefits were due to expire." *Id.* The Court further ordered that "Plaintiff's claim for benefits under the 'any occupation' standard is remanded to Defendant for proceedings consistent with this Order." *Id.*

On February 15, 2011, Plaintiff filed the Motion for Attorney's Fees, ECF No. 102, and submitted a Bill of Costs, ECF No. 103. Plaintiff requested an award of attorney's fees in the amount of $404,943.75, "inclusive of total fees less an 8% total write off ($33,006.25), and the fees connected with preparing this motion ($20,727.50)." (ECF No. 102-1 at 10). Plaintiff submitted an affidavit from Plaintiff's counsel, billing records, and numerous exhibits. (ECF No. 102-2 through 102-4).

On March 8, 2011, Defendants filed an opposition to the Motion for Attorney's Fees. (ECF No. 106). Defendants contend:

> Plaintiff's fee request [should] be denied in its entirety. A denial of Plaintiff's request under the circumstances will prevent encouraging attorneys to overwork a simple file.
>
> If the court were inclined to award fees, however, Plaintiff's attorneys' fee request should be significantly reduced in terms of the hours expended, which are unmistakably excessive. LINA requests a reduction in fees of no less than $118,470.12, plus the amounts the Court believes were excessively spent on the Memorandum of Facts and Law and the Joint Proposed Pretrial Conference Order.

*Id.* at 14.

On March 10, 2011, the Clerk of the Court taxed costs in favor of Plaintiff in the amount of $1,243.57. (ECF No. 107). No motion for review of the Clerk's taxation of costs has been filed.

On March 14, 2011, Plaintiff filed a reply in support of the Motion for Attorney's Fees. (ECF No. 108). Plaintiff contends:

> Defendants conclude that the Nash case involved such a 'simple file.' Plaintiff submits that the Court's Order itself reveals this not to be the case. Having provoked the fight it did by unreasonably terminating Nash's own-occupation benefits, essentially ignoring the points raised in his appeals, and leaving him with no income other than Social Security benefits as support for his wife and three young children for 4 years, then tenaciously litigating the case throughout litigation, LINA now argues that [Plaintiff's counsel] Miller Monson's

> responsive time and fees are 'clearly excessive.' Plaintiff contends there is insufficient basis for excluding from the lodestar calculation the hours to which Defendants object other than a very minor amount.... Those hours were reasonably devoted to this case in light of the issues raised, their ... complexity, Miller Monson's experience in assessing the issues of these cases, the level of resistance from LINA (including throughout discovery), the burden Plaintiff bore at trial, and the risk that inadequate preparation at any stage could have led to no recovery (and, correspondingly, no attorneys' fees).

*Id.* at 5. In the reply, Plaintiff agrees to a reduction of $2,616.00 from the amount requested in the motion, and requests an additional $7,520.00 for preparing the reply. Plaintiff's updated lodestar fee request is $409,847.75.

## II.  Discussion

### A.  Whether to Award Attorneys' Fees

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A] fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, --- U.S. ---, 130 S. Ct. 2149, 2158 (2010) (quotation omitted). "[A] claimant does not satisfy that requirement by achieving a 'trivial success on the merits or a purely procedural victory.' However, a claimant can satisfy that requirement if 'the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.'" *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120-21 (9th Cir. 2010) (quoting *Hardt*, 130 S. Ct. at 2158). "Only after passing through the 'some degree of success on the merits' door is a claimant entitled to the district court's discretionary grant of fees under § 1132(g)(1)." *Id.* at 1121.

"In the Ninth Circuit, the discretionary decision to award fees has traditionally been governed by the five factors set forth in *Hummell* [*v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980)]." *Id.* Those factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453. "[A]fter determining a litigant has achieved some degree of success on the merits, district courts must ... consider the *Hummell* factors before exercising their discretion to award fees under § 1132(g)(1)." *Simonia*, 608 F.3d at 1121. "When we apply the *Hummell* factors, we must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of protecting participants in employee benefit plans. We also apply a 'special circumstances' rule in which a successful ERISA participant should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (quotations omitted).

It is undisputed that Plaintiff achieved "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2158. Accordingly, the Court considers the five *Hummell* factors. With respect to the first factor, the Court does not find that LINA acted in bad faith. "However, bad faith is not a prerequisite to an ERISA fee award." *McElwaine*, 176 F.3d at 1173 (citation omitted). With respect to the second factor, it is undisputed that LINA is able to pay a fee award without hardship. With respect to the third factor, the Court finds that "[a]n award of attorneys' fees based on a plan administrator's incorrect decision signals to other plan administrators that they should not similarly abuse their discretion." *Sluimer v. Verity, Inc.*, No. C-08-1220, 2008 WL 5048434, at *3 (N.D. Cal. Nov. 24, 2008); *cf. McElwaine*, 176 F.3d at 1173 ("A fee award would deter other employers from forcing beneficiaries to undertake costly litigation to preserve their claims."). With respect to the fourth factor—whether Plaintiff sought to benefit all plan participants or to resolve a significant legal question regarding ERISA—the Court finds that this factor is neutral. With respect to the fifth factor—the relative merits of the parties' positions—the Court finds that this factor weighs in favor of awarding fees to Plaintiff for the reasons discussed in the December 9, 2010 Order. Overall, the Court finds that the *Hummell* factors weigh in favor of awarding fees to Plaintiff. The Court finds no special circumstances would render a fee award unjust.

The Court finds that Plaintiff is entitled to a reasonable attorney's fee pursuant to 29 U.S.C. § 1132(g)(1).

**B.     Amount of Fees**

"[A]ttorney fees under § 1132(g)(1) are calculated using a hybrid lodestar/multiplier approach." *McElwaine*, 176 F.3d at 1173 (citation omitted). "The lodestar/multiplier approach has two parts. First, a court determines the 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar. The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Id.* (quotations and citations omitted).

"It must ... be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.... By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (citation omitted). "[T]he burden of producing a sufficiently cogent explanation [for reducing an excessive fee request] can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices. If opposing counsel cannot come up with

1  specific reasons for reducing the fee request that the district court finds persuasive, it should
2  normally grant the award in full, or with no more than a haircut." *Moreno*, 534 F.3d at 1116.
3        Plaintiff's counsel, Miller Monson Peshel Polacek & Hoshaw ("Miller Monson"),
4  submits evidence indicating that the firm billed 1050.1 attorney hours, plus 100.8 paralegal
5  hours (and miscellaneous assistant time) in this litigation, exclusive of the fees for preparation
6  of the fee motion and reply. Miller Monson billed 41.4 attorney hours and 33.2 paralegal
7  hours preparing the fee motion, and 18.8 attorney hours preparing the reply. Plaintiff seeks
8  the following rates: Thomas M. Monson, partner: $425/hour; Susan L. Horner, partner:
9  $400/hour (and $175/hour "for litigation tasks that were closer to paralegal duties but
10 necessary for her to perform"); Violet Borowski, attorney: $375/hour; Nancy Smith, paralegal:
11 $125/hour or $25/hour, depending upon the task; and Linda Collier, paralegal: $75/hour or
12 $25/hour, depending upon the task. (ECF No. 102-1 at 10; ECF No. 102-3 at 5). The sub-total
13 of fees billed, exclusive of those related to the fee motion and reply, are $417,222.50. Miller
14 Monson voluntarily wrote off 8% of the total, $33,006.25, plus an additional $2,616 after
15 receipt of Defendants' opposition to the fee motion. Miller Monson requested $20,727.50 for
16 preparing the fee motion and $7,520 for preparing the reply in support of the fee motion. The
17 total requested lodestar amount, inclusive of the fee motion, the reply and all voluntary write-
18 offs, is $409.847.75.
19       Defendants do not contest the hourly rates requested by Plaintiff. Plaintiff submits
20 numerous declarations from "ERISA plaintiff attorneys" in southern California, who indicate
21 their hourly rates and their knowledge of the work-product of the Miller Monson attorneys
22 who worked on Plaintiff's case. (ECF No. 102-2 at 9). The Court finds that the hourly rates
23 requested by Plaintiff's counsel are reasonable. *Cf. Camacho v. Bridgeport Fin., Inc.*, 523
24 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the
25 relevant community is the forum in which the district court sits."); *Kochenderfer v. Reliance*
26 *Standard Life Ins. Co.*, No. 06-cv-620, 2010 WL 1912867, at *4 (S.D. Cal. Apr. 21, 2010)
27 ("[T]he Court finds that the reasonable rate for this type of work in the Southern District of
28 California for Mr. Monson is $425.00 per hour and the reasonable rate for Ms. Horner is

1  $400.00 per hour.") (awarding Miller Monson fees in the amount of $409,646.50 in an ERISA
2  action resolved after cross-motions for summary judgment).

3  Defendant contends that "the Court should significantly reduce the 1211.5 hours of
4  work allegedly performed in this matter." (ECF No. 106 at 5-6). Defendants contend that fees
5  for pre-litigation activities are not recoverable, and the billed time attributable to preparing the
6  39-page Complaint, with 10 exhibits, constitute "excessive self-serving work." *Id.* at 10.
7  Plaintiff contends that the pre-litigation work "was performed after preparing and presenting
8  the administrative appeal and ... was necessary to the prosecution of the litigation," and "Miller
9  Monson files detailed complaints only where [the attorneys] believe it has a strong possibility
10 of facilitating an early settlement in the case." (ECF No. 108 at 6). Horner billed 52.1 hours
11 between September 24, 2007 and July 15, 2008, totaling $16,845, for "preparation for
12 litigation, including background, initial research and investigation." (ECF No. 102-2 at 25).
13 Miller Monson billed 106.3 hours (primarily attributable to Horner) between July 23, 2007 and
14 June 27, 2008, totaling $41,022.50, for "preparation of Complaint, finalized and filed May 21,
15 2008." *Id.*

16 The fee award provision in ERISA, 29 U.S.C. § 1132(g)(1), is construed as "limiting
17 the fee award to fees incurred in the litigation in court." *Cann v. Carpenters' Pension Trust*
18 *Fund for N. Cal.*, 989 F.2d 313, 316 (9th Cir. 1993). However, fees may be recovered for
19 "work performed before the filing of the complaint [such as] conferences with clients, drafting
20 the complaint and other reasonable efforts directed toward the filing of the litigation."
21 *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001) (quotation omitted).

22 After review of the time entries at issue, and in light of Defendants' failure to point to
23 specific time entries alleged to be excessive, the Court finds that the time billed for pre-
24 litigation work, including preparation of the Complaint, is reasonable. (ECF No. 102-2 at 83-
25 90).

26 Defendants also contend generally that Miller Monson billed excessive amounts toward
27 preparation of the Motion for Attorney's Fees, the Memorandum of Contentions of Fact and
28 Law and the Joint Proposed Pretrial Conference Order. After review of the time entries at

issue, and in light of Defendants' failure to point to specific time entries alleged to be excessive, the Court finds that the time billed is reasonable. (ECF No. 102-2 at 124-128; *id*. at 131-36; *id*. at 150, 155-56). In making this assessment, the Court considers the fact that Miller Monson included a 15% write-off for preparation of the Memorandum of Contentions of Fact and Law and a 9% write-off for preparation of the Joint Proposed Pretrial Order.

Defendants contend that time entries totaling $11,337.50, which are attributed to paralegals, are for secretarial or clerical activity and are not compensable. In reply, Plaintiff agreed that $2,416 of the entries are clerical in nature and should be cut. Plaintiff disputes that the remaining amounts are for clerical work which is not compensable. After review of the disputed time entries, the Court finds that the disputed entries describe activities, such as finalizing court filings and reviewing the administrative record, which can reasonably be described as paralegal activities. (ECF No. 102-2 at 30-35).

Defendants contend that certain time entries by Horner represent "[g]eneral research on globally relevant issues" which "should not be compensated in this litigation." (ECF No. 106 at 12). In response, Plaintiff agreed to cut one time entry, but contends that the remaining entries, totaling $10,640, "were necessarily related to and/or used directly in the case." (ECF No. 108 at 7). After review of the disputed time entries, the Court finds that the disputed entries describe research of cases and subjects reasonably related to this litigation. *See* ECF No. 102-2 at 43-72; *cf*. *Moreno*, 534 F.3d at 1112 ("When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.").

Defendants contend that "Plaintiff's attorney impermissibly block-bills entries, making it difficult to determine how much time was spent on a particular task and likely leading to a fee inflation of at least 30%." (ECF No. 106 at 12). Plaintiff responds that "it is not 'impermissible' block billing to bill an entire day when one works throughout an entire day

weaving in aspects of the same motion through coordinated documents." (ECF No. 108 at 10). "[B]lock billing makes it more difficult to determine how much time was spent on particular activities," and may be discounted.[1] *Welch*, 480 F.3d at 948. The Court has reviewed each of the 13 entries which Defendants contend should be discounted by 30% for block billing. (ECF No. 102-2 at 51-73). The Court finds that the time entries at issue reasonably concern related tasks which are compensable and allow for meaningful judicial review. *See Kochenderfer*, 2010 WL 1912867, at *5 ("The tasks that Plaintiff lumps together are not the type of disparate activities that make it difficult to determine whether the time spent was reasonable. Instead they are all elements of a single larger task. Given the consonance of the acts, the Court does not find that the few instances which Defendants claim constitute block billing are unreasonable or require a reduction."). The Court finds that the disputed time entries are compensable.

Defendants contend that Plaintiff should not be awarded fees related to discovery requests and a subsequent motion to compel which was granted in part and denied in part by the Magistrate Judge. *See* ECF No. 33. Miller Monson wrote off 30% of its fees related to the motion to compel. (ECF No. 102-2 at 17). The Court declines to reduce this portion of the fee request further on the basis that Plaintiff's discovery motion was not fully successful. *Cf. McElwaine*, 176 F.3d at 1173 (when determining a fee request, "[h]indsight ... distorts an otherwise straightforward analysis, and we decline to apply that filter").

Defendants contend that the 35.2 hours billed by attorney Monson should be reduced to 0.7 hours on the basis that Monson's work was "duplicative and/or unnecessary" in light of Horner's work. (ECF No. 106 at 13). Plaintiff responds that Defendants utilized three attorneys in this case, and "Miller Monson's ERISA litigation department consists of only 2 attorneys: Horner and Monson. There are no associates to whom they can delegate work." (ECF No. 108 at 8). After reviewing Monson's billings, which comprise approximately 3% of the total billings, the Court does not find that Monson's work constitutes an unnecessary

---

[1] "'Block billing' is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch*, 480 F.3d at 945 n.2 (quotation omitted).

1  duplication of effort.  *Cf. McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995)
2  ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary
3  duplication of effort.") (quotation omitted).
4       After review of the Motion for Attorney's Fees, the submissions of the parties, and the
5  record in this case, the Court finds that the total requested lodestar amount of $409,847.75
6  (inclusive of the fee motion, the reply and all voluntary write-offs) reflects reasonable hourly
7  rates and an amount of hours supported by the evidence and reasonably expended.  The Court
8  does not find that this is a "rare and exceptional case[]" warranting adjustment of the lodestar
9  using a "multiplier."  *Van Gerwen*, 214 F.3d at 1045.

10 **III.  Conclusion**

11      IT IS HEREBY ORDERED that the Motion for Attorney's Fees is GRANTED. (ECF
12 No. 102).  Pursuant to 29 U.S.C. § 1132(g)(1), the Court awards Plaintiff attorney's fees in the
13 amount of $409,847.75.
14 DATED:  June 22, 2011

                             *William Q. Hayes*
                         **WILLIAM Q. HAYES**
                         United States District Judge